70 F.3d 116
 Pens. Plan Guide P 23915X
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
RESILIENT FLOOR DECORATORS VACATION FUND; Resilient Floor
Decorators Pension Fund; Resilient Floor Decorators
Supplemental Pension Fund; Resilient Floor Decorators Joint
Apprenticeship Fund; Resilient Floor Decorators Insurance
Fund, Plaintiffs-Appellants,
v.
CONTRACT CARPET, INC.; Imperial Floor Covering, Inc.,
Defendants-Appellees.
 No. 93-2594.
 United States Court of Appeals, Sixth Circuit.
 Oct. 17, 1995.
 
 Before: BOGGS and SILER, Circuit Judges, and JOHN R. GIBSON, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 The Resilient Floor Decorators Funds[1] appeal the district court's judgment denying their claim to collect unpaid contributions under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1001 et seq., against Imperial Floor Covering, Inc. and Contract Carpet Service, Inc. The essence of the Funds' argument, both in the district court and this court, is that Imperial was the employer of carpet installers and was the alter ego of Contract Carpet for purposes of the collective bargaining agreements entered into by Contract Carpet and Resilient Floor Decorators Local Union No. 2265, and that Imperial failed to pay the Funds as required by the agreements. The district court held that Imperial's installers were not employees, but independent contractors, that there was no alter ego relationship between Imperial and Contract Carpet, and that no payments were due. We affirm the district court's judgment.
 
 
 2
 Imperial was incorporated in 1965, and sold floor covering, including carpet, vinyl sheet, ceramic tile, and wood flooring. Imperial never signed a collective bargaining agreement with Resilient Floor Decorators Local Union No. 2265. Contract Carpet was incorporated on February 28, 1979, and did not sell any flooring material from 1987 to 1993. Contract Carpet was a party to a series of collective bargaining agreements with the Resilient Floor Decorators Local Union No. 2265 from February 1979 through 1992. Imperial has hired Contract Carpet to install carpet.
 
 
 3
 The district court held that Imperial's installers were independent contractors, not employees, and made the following findings in support of its holding:
 
 
 4
 [T]he installers were issued 1099 forms and not W-2's. They often used their own vehicles to transport carpet to the job site. They reported to Imperial Floor's warehouse only on the occasions when they had agreed to do a specific job. They were paid on a job-by-job basis and in fact negotiated the payment for each job. They were free to accept or decline any jobs that Imperial Floor offered them and were free to accept jobs from Imperial Floor's competitors. There was no daily supervision of their work and in fact the "approval" as to whether or not the job was satisfactory was often made by the general contractor, not Imperial Floor.
 
 
 5
 The district court then turned to the Funds' claim that Imperial was the alter ego of Contract Carpet. The district court considered the three factors identified in our earlier decisions for determining whether two corporations are alter egos. The district court found that none of the three factors indicated that Imperial and Contract Carpet were alter egos. Thus, the district court rejected the Funds' alter ego argument.
 
 I.
 
 6
 The Funds argue that the district court's opinion does not satisfy Federal Rule of Civil Procedure 52(a) because its findings of fact are too sparse to permit appellate review. While the opinion is succinct, it clearly sets out the controlling principles of law and the necessary findings of fact. Certainly, in a record as substantial as that before the district court, more could have been said, but the district court in a judicious exercise of economy said enough to decide the case. We cannot conclude that the district court did not comply with Rule 52(a).
 
 II.
 
 7
 The Funds argue that the district court erred in ruling that the installers were not employees of Imperial, but were rather independent contractors. "The determination of employment status is a mixed question of law and fact." Lilley v. BTM Corp., 958 F.2d 746, 750 n. 1 (6th Cir.), cert. denied, 113 S.Ct. 376 (1992). The precise issue before us is whether the installers were employees within the meaning of ERISA, which defines employee as "any individual employed by an employer." 29 U.S.C. Sec. 1002(6) (1988). Excluded from the definition of employee in the National Labor Relations Act, also applicable to this case, is "any individual having the status of an independent contractor." 29 U.S.C. Sec. 152(3) (1988). In considering the meaning of employee in the ERISA context, the Supreme Court, in Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318 (1992), determined that the statutory definition was circular and adopted the common-law test for determining who qualifies as an employee under ERISA. Id. at 323. The Court in Darden stated that in determining whether a hired party is an employee or an independent contractor, a court should examine the following factors:
 
 
 8
 the hiring party's right to control the manner and means by which the [work] is accomplished[;] ... the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.
 
 
 9
 Id. at 323-24 (quoting Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989)). A court should not restrict itself to this list of factors, as it should examine all aspects of the relationship between the parties to discover the nature of the relationship as a whole. Id. at 324. Citing Eyerman v. Mary Kay Cosmetics, Inc., 967 F.2d 213, 219 (6th Cir.1992), the district court recognized the applicability of this test. Applying this test, the district court came to the conclusion that the installers working for Imperial were independent contractors and not employees.
 
 
 10
 There is no dispute between the parties as to the applicable test. The Funds' argument is that the district court's findings are not supported by the record, and that we should conclude that the district court erred in finding that the installers were not employees. The Funds argue that the district court chose to ignore testimony of the witnesses, which it sets out in some detail in its brief. In essence, while not clearly so articulated, the Funds are attacking the district court's findings as clearly erroneous.
 
 
 11
 In this respect, we are guided by the standard enunciated in Anderson v. City of Bessemer City, 470 U.S. 564 (1985):
 
 
 12
 If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.
 
 
 13
 Id. at 573-74.
 
 
 14
 The testimony of Robert Broyles, a former installer for Imperial, squarely addresses the nature of the work done by Imperial's installers. His testimony amply supports the district court's factual findings concerning the nature of the work done by Imperial's installers. Broyles testified that when he worked for Imperial he considered himself an independent businessman, was free to accept or reject work Imperial offered him, and had turned down jobs because the price was not right. Broyles also stated that he was free to perform installation work for any other company, including Imperial's competitors, used his own tools and van, and that no one from Imperial supervised him in his work. He further testified that Imperial gave him no benefits such as vacation pay or health insurance, and deducted no taxes from his paychecks.
 
 
 15
 The depositions of two other installers are in the record, John Beaudrie and Kirby Shobe, both of whom worked for Imperial as dispatchers. Ernest Lewis, Imperial's president, gave a deposition, parts of which are also in the record. It suffices to say that much of the testimony of these witnesses dealt with the alter ego issue. Insofar as their testimony dealt with the issues causing the court to find that the installers were independent contractors for Imperial and were not employees, their testimony was consistent with that given by Broyles. The testimony was clear that many of the installers doing work for Imperial as independent contractors were employees of Contract Carpet and, in that capacity, contributions were made on their behalf to the Funds. Their testimony as a whole, however, supported that given by Broyles, and fully supported the findings of fact made by the district court and its ultimate determination that the installers were not employees of Imperial but independent contractors.
 
 
 16
 Insofar as there may be conflicts between the testimony of some of these witnesses and Broyles, and the differences were few, the district court, under City of Bessemer City, had the responsibility of weighing the evidence, and the district court's choice between any conflicting evidence is not clearly erroneous. The district court's findings of fact on the issue of whether the installers were employees or independent contractors were fully supported by the evidence, are not clearly erroneous, and fully supported the court's ultimate holding that the installers were not employees and, therefore, not subject to payments to the Funds.
 
 
 17
 Our conclusion that the district court did not err in its determination that the installers were independent contractors of Imperial disposes of the Funds' claim. If the installers are not employees within the meaning of ERISA, 29 U.S.C. Sec. 1002(6), Imperial cannot be liable for contributions.
 
 III.
 
 18
 The Funds argue that the district court erred in determining that Imperial and Contract Carpet were not alter egos. A court may find that two corporations are alter egos of one another: "if 'there are substantial reasons for doing so' after weighing: (1) the amount of respect given to the separate entity of the corporation by its shareholders; (2) the degree of injustice visited on the litigants by recognition of the corporate entity; and (3) the fraudulent intent of the incorporators." Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc., 872 F.2d 702, 704 (6th Cir.1988) (per curiam) (quoting Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan v. Hroch, 757 F.2d 184, 190 (8th Cir.1985)). In weighing these factors, the court may consider, but is not limited to, the following: undercapitalization of the corporations; the maintenance of separate books; the separation of the corporations' finances; the use of the corporations to support fraud or illegality; the honoring of corporate formalities; and whether the corporations are merely shams. Id. at 704-05. After weighing each of the three factors, the court should then determine whether all three factors taken together constitute "substantial reasons for" disregarding the separate identity of a corporation.
 
 
 19
 The Funds argue that there was little respect for the separate corporate structures of Imperial and Contract Carpet. They contend that Contract Carpet was nothing but a corporate shell controlled entirely by Imperial. The Funds also point out that to recognize the formal corporate structures of Imperial and Contract Carpet would result in an injustice to them because they would be deprived of monetary contributions owed to them by Imperial. The Funds insist that installers who have worked for Imperial will be unjustly deprived of future benefits if Imperial is not liable for contributions as Contract Carpet's alter ego. Finally, the Funds argue that Imperial committed fraud by creating Contract Carpet as a mere corporate shell and using it to avoid its obligations to the Funds.
 
 
 20
 The district court found that "Contract Carpet was and is a validly incorporated entity, which filed separate articles of incorporation and which filed annual reports[,]" and that there was "no evidence of common ownership" between Imperial and Contract Carpet. The district court also found that no injustice would result from recognizing the corporate form because Imperial's installers never expected Imperial to contribute to the Funds and that there was no evidence of fraudulent intent in the creation and maintenance of Imperial and Contract Carpet. The findings were fully supported by the evidence, and insofar as there were conflicts, they were for the district court to resolve.
 
 
 21
 We cannot say that the district court's factual findings as to each of the three alter ego factors are clearly erroneous. There is evidence that before this litigation, no one expected Imperial to pay contributions to the Funds for work done by its installers. There is also evidence that the installers understood that Contract Carpet was a "union shop" and would make contributions, but that Imperial only hired independent contractors and would not make contributions. There can be no injustice, fraudulent intent, or need to protect employees from being deprived of anticipated benefits under such circumstances.
 
 
 22
 The Funds argue that the district court applied the incorrect legal standard in its alter ego analysis by requiring a finding of fraudulent intent before it would ignore the separate status of the corporations. The court found, however, that none of the three factors in the alter ego analysis were supported by the evidence. Thus, even assuming that the district court erred in requiring a finding of fraudulent intent, statements in this respect did not affect its conclusion that Contract Carpet and Imperial were not alter egos.
 
 
 23
 The Funds do not dispute that Contract Carpet has paid all of its required contributions for its employees. The Funds only seek contributions based on the work done by Imperial's installers. The district court's conclusions that Imperial's installers were not employees but independent contractors, and that Contract Carpet and Imperial were not alter egos, prevent the Funds from imposing liability on Imperial.
 
 
 24
 We affirm the district court's judgment in favor of Imperial and Contract Carpet.
 
 
 
 *
 The Honorable John R. Gibson, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 Vacation, Pension, Supplemental Pension, Joint Apprenticeship and Insurance